MERRILL RAILWAY & LIGHTING COMPANY and others, Respondents, vs. CITY OF MERRILL and another, Appellants.

*September 11—September 29, 1903.*

*Taxation: Construction of statutes: Street railway companies paying license fees: Exemption of property "owned": Leasehold interest.*

1. Where a statute in terms exempting property from general taxation is only a part of a general statutory scheme substituting a license fee or other impost in lieu of general taxation, such statute is to be construed liberally in favor of the person required to pay taxes in the substituted form.

2. The word "owned", as used in statutes, is not a technical term, but is a general expression to describe a great variety of interests, and may vary in significance according to context and subject matter.

3. Subd. 14, sec. 1038, Stats. 1898, provides that where a street railway company pays the license fee therein mentioned, "all personal property, franchises, and real estate owned and actually and necessarily used" by such company in the operation of its

business shall be exempt from taxation. *Held,* that land leased by such a company for a term of five years and used as specified was "owned" by the company within the meaning of the statute and was exempt from general taxation; and such exemption applies not merely to the leasehold interest but to the land itself.

MARSHALL, J., *dissenting,* is of the opinion that a liberal construction of the statute should not go farther than to exempt all property which, if it were not for the license fee system, would be directly taxable to the street railway company.

APPEAL from a judgment of the circuit court for Lincoln county: W. C. SILVERTHORN, Circuit Judge. *Affirmed.*

. The plaintiff company was the owner of and engaged in operating a street railway and electric lighting business in the city of *Merrill.* Its power plant having been destroyed, the individual plaintiffs, *Cotter et al.,* who were principal stockholders, purchased a tract of land with water power appurtenant, and constructed thereon a power plant building, with connection with said water power and with a steam engine, and in May, 1899, rented indefinitely, and in September, 1900, by formal written lease, leased to the company for a period of five years, all except four acres of said tract, of land, together with the dam and water power and all flowage privilege; reserving, however, as appurtenant to the four acres not leased, the right to use all water power in excess of the needs of the company. The company agreed to pay all taxes. Since May, 1899, the plant has been used and operated by the company to supply the electric power for its street railway and its lighting business. In 1900 the entire tract of land, including both that leased by the individual plaintiffs and that reserved, was treated as exempt by the taxing officers of Merrill, but in 1901 such entire tract was placed upon the tax roll, and assessed to the individual plaintiffs, its fee owners, at the value of $20,000, and was included in the general tax levy for both 1900 and 1901, against protest before the board of review that it was not taxable because it was a part of the entire plant and property of the railway

and lighting company, which had paid license fees in lieu of all taxes, in compliance with the statutes relating to such property. The tax roll being returned to the city treasurer, this suit was brought by both the railway company and the owners of the land to remove the cloud and declare void the tax so far as it related to any land except the reserved four acres.

The court having found the facts substantially as above stated, and decided that the land leased to the railway and lighting company was not subject to taxation, a division of values was made, and the proper tax upon the reserved four acres was ascertained by stipulation, and judgment entered declaring void the entire tax so levied and discharging the lien therefor upon payment of the proper amount of tax on the four acres; from which judgment the defendants appeal.

For the appellants there were briefs by *John Van Hecke,* attorney, and *Thomas J. Mathews,* of counsel, and oral argument by *Mr. Van Hecke.* To the point that the word "owned" as used in tax statutes refers to legal ownership, and that lands held under lease are not owned by the lessee, they cited *Douglas Co. Agr. Soc. v. Douglas Co.* 104 Wis. 429; 12 Am. & Eng. Ency. of Law (2d ed.) 324, 325; *Tracy v. Reed,* 38 Fed. 69, and cases cited; 25 Am. & Eng. Ency. of Law (1st ed.) 120; Black, Tax Titles, § 106.

For the respondents there was a brief by *Curtis & Reid,* and oral argument by *A. H. Reid.* As to the meaning of the word "owned," they cited Rapalje & L. Law Dict. Ownership; 17 Am. & Eng. Ency. of Law, 299, 300, and notes pp. 301, 302; *Lozo v. Sutherland,* 38 Mich. 168, 171; *Orr v. Shraft,* 22 Mich. 261; *Choteau v. Thompson,* 2 Ohio St. 114, 122; *Wis. R. L. D. Asso. v. Comstock L. Co.* 72 Wis. 464; *Galligan v. Providence,* 11 R. I. 258; *Shoote v. Harvey,* 105 Pa. St. 222; *McKee v. McCardell,* 22 R. I. 71, 46 Atl. 181; *State v. Wyl,* 55 Mo. 67; *Baltimore & O. R. Co. v. Walker,* 45 Ohio St. 577, 16 N. E. 475; *Dutro v. Wilson,* 4 Ohio St.

102; *Bronk v. Becker,* 17 Wend. 320, 323; 2 Bouvier, Law Dict. 565; *Dow v. Gould & C. S. M. Co.* 31 Cal. 649; *Dubois v. Hepburn,* 10 Pet. 1; *Radcliff v. Wood,* 25 Barb. 52; *Burns v. Keas,* 21 Iowa, 263; *North Penn. R. Co. v. Davis,* 26 Pa. St. 238; *Mourilyan v. Labalmondiere,* 30 L. J. M. C. 95, 1 E. & E. 533; *Hunt v. Harris,* 34 L. J. C. P. 249, 19 C. B. (N. S.) 13; *Carr v. Stringer,* E., B. & E. 123; *Baltimore v. Canton Co.* 63 Md. 218; *Tompkins v. A. & K. R. Co.* 21 S. C. 420; *Tutt v. P. R. & A. R. Co.* 28 S. C. 388; *Taite v. Gosling,* 27 Weekly Rep. 394, 8 Cent. Law J. 462; *Gitchell v. Kreidler,* 84 Mo. 476; *Wellington v. Stare,* 52 Ark. 266; *Loonie v. Hogan,* 9 N. Y. 435; *Wilder v. Haughey,* 21 Minn. 101; *Hartman v. Munch,* 21 Minn. 107; *Severin v. Cole,* 38 Iowa, 463.

DODGE, J. Our statutes subjecting those engaged in operating street railways, with or without electric lighting and power plants, to a charge graduated upon their gross revenues, in lieu of other taxation, as a part of that scheme contain the provision (subd. 14, sec. 1038) to the effect that upon payment of such license fee "all personal property, franchises, and real estate owned and actually and necessarily used by such person, company, or corporation in the operation of its business, shall be exempt from taxation and other license fees." Appellants claim that by the clear words of this statute such exemption is confined to real estate absolutely owned in fee simple, while respondents claim that it extends to include property held by lease, as in the present case. The question presented is without direct authority in Wisconsin, and in solving it we are driven to decide which of two rules is applicable; such rules being thoroughly well established in this state, so that little aid is obtainable from other jurisdictions where one or other of them has not been so fully adopted.

On the one hand, it has been held in this state that statutes

exempting property from the general rule of taxation are to
be construed with the utmost strictness, and that, as so con-
strued, the word "owned," in statutes describing exempt prop-
erty, must receive its most limited meaning, and be satisfied
only by complete and entire ownership, or at least not by
leasehold title. *Weston v. Shawano Co.* 44 Wis. 242,, 256;
*Milwaukee v. Milwaukee Co.* 95 Wis. 424, 69 N. W. 819;
*Katzer v. Milwaukee,* 104 Wis. 16, 80 N. W. 41; *Douglas Co.
Agr. Soc. v. Douglas Co.* 104 Wis. 429, 80 N. W. 940. On
the other hand, it is equally well settled that, where the stat-
ute in terms exempting property from general taxation is
only a part of a general statutory scheme substituting a
license or other impost in lieu of general taxation, the rule
of strict construction has no application, but, on the contrary,
such a statute is to be construed liberally in favor of the per-
son required to pay taxes in the substituted license form.
*Milwaukee & St. P. R. Co. v. Crawford Co.* 29 Wis. 116;
*Milwaukee & St. P. R. Co. v. Milwaukee,* 34 Wis. 271, 277;
*State ex rel. Abbot v. McFetridge,* 64 Wis. 130, 24 N. W.
140; *Milwaukee E. R. & L. Co. v. Milwaukee,* 95 Wis. 39,
47, 69 N. W. 794; *Duluth, S. S. & A. R. Co. v. Douglas Co.*
103 Wis. 75, 88, 79 N. W. 34.

It cannot be denied that the word "own" is used both col-
loquially and in the law to designate a great variety of in-
terests in property. As titles and rights to real property vary
from the absolute and unqualified fee simple to that of the
mere occupant, so the word "own" or "ownership" varies in
its significance. For most practical purposes the tenant
under a lease for 1,000, or even for 100, years exercises as
complete control as the holder of the fee simple. The holder
of a fee subject to be determined on some remote contingency,
or the holder of a life estate, satisfies the ordinary conception
of ownership, but the gradations from this phase of partial
ownership to that of the mere tenant from month to month
are nearly infinite in number, and each almost infinitesimal

in degree. It seems, therefore, quite impossible to draw any line logically between the absolute and unqualified fee simple on the one hand and the mere right of occupancy on the other. Hence it is not surprising that we find the word in statutes given the widest variety of construction, usually guided in some measure by the objects sought to be accomplished in the particular instance. This has led some courts to declare that the word has no precise legal signification and may be applied to any defined interest in real estate. *Gitchell v. Kreidler,* 84 Mo. 476. It has been applied to a mere bailee in construing log-driving lien statutes in Wisconsin. Sec. 3337, Stats. 1898; *Wis. R. L. D. Asso. v. Comstock L. Co.* 72 Wis. 464, 40 N. W. 146. The instances where the word "own" has been held satisfied by something less than absolute and entire ownership are far too numerous to permit citation. The following are a few in which mere leasehold interest has been deemed sufficient: *Gilligan v. Aldermen,* 11 R. I. 258; *State v. Wyl,* 55 Mo. 67; *Proctor v. H. & St. J. R. Co.* 64 Mo. 112; *Choteau v. Thompson,* 2 Ohio St. 114; *Baltimore & O. R. Co. v. Walker,* 45 Ohio St. 577, 16 N. E. 475; *North Penn. R. Co. v. Davis,* 26 Pa. St. 238; *Schott v. Harvey,* 105 Pa. St. 222, 228; *Eglinton v. Norman,* 46 L. J. Q. B. 557; *Mourilyan v. Labalmondiere,* 30 L. J. M. C. 95. Thus it appears very clearly that the word "owned" is not a technical term; that it is a general expression to describe a great variety of interests, and may vary in significance according to context and subject matter. That being so, we are constrained by the rule of the Wisconsin authorities to give to it in the statute now under consideration as liberal construction as it will reasonably bear in favor of the respondent company, which has paid the full license fee imposed by law in lieu of all other taxes. The applicability of this rule requiring liberality of construction of course renders nonauthoritative the cases where, as expressly declared, the court was bound to adopt the most strict and limited meaning of which the same word was capable.

In the light of these rules for construction, then, we have to consider whether the legislature can in reason be supposed to have used the word "owned" in so general a sense as to be satisfied by a leasehold right for a term of five years. The purpose of this whole scheme was to measure the contribution of street railways to the public revenues by the earning capacity of their plants as entireties, recognizing that such plants include many elements which are peculiarly intangible and difficult of valuation by ordinary methods, such as the franchises to do business; the privileges to use highways and public grounds; the questionable title to the structures affixed to such realty and consequent difficulty of valuation specifically; the uncertainty, if not absence, of sale value of each element of the plant, except as used in connection with every other part and in connection with the special franchises and privileges. It seems to us entirely probable that the legislature intended in a general way to exempt from specific assessment and taxation those things which, in association with each other, help to produce the gross revenue on which the license fee is to be measured. In this view it is difficult to see why leased property should not fall within the purpose of the exemption as readily as that owned absolutely, while actually used for the purposes of the enterprise. What difference would it make that this power plant had been purchased? Such fact would neither enhance nor diminish the gross earnings of the entire plant, nor the contribution thereto of this particular property. Why should the legislators care whether the dynamos in the power house or the motors on the cars were owned or leased? In either case they contribute equally to produce the revenue on which the license fee is graded. A further consideration arises out of the general public policy that the entire plant should not be subject to enforced disintegration or severance by process of law. This policy has been so emphatically declared, and the reasons for it so fully explained, that we need only refer to its existence. *Wilkinson v. Hoffman*, 61 Wis. 637, 21 N. W.

816; *Fond du Lac W. Co. v. Fond du Lac,* 82 Wis. 322, 52 N. W. 439; *Chapman V. Mfg. Co. v. Oconto W. Co.* 89 Wis. 264, 60 N. W. 1004; *State ex rel. Mil. St. R. Co. v. Anderson,* 90 Wis. 550, 562, 63 N. W. 746. Is it not probable that a public policy so important that it has been held sufficient to impliedly repeal or restrain statutes regulating the enforcement of mechanics' liens and the execution of judgments should have been deemed a sufficient reason why even leased property, constituting an integral part of a railway plant and system, should not be subject to be wrenched from such association by the process of sale provided for collection of taxes laid on specific realty? Other considerations might be urged, but those suggested are sufficient to show that the use of the word "owned" in a sense to be satisfied by a leaseholding is not so unreasonable as to be unwarranted under the rule of liberal construction which must guide us. We accordingly hold that at the time of the assessment and levy of the taxes assailed the power plant and water power, except so much of the latter as was reserved in appurtenance to the other lands of the fee owners, was "owned and actually and necessarily used" by the plaintiff corporation "in the operation of its business," within the meaning of those words in subd. 14, sec. 1038, Stats. 1898, and was, therefore, not subject to general taxation.

A suggestion is made by appellants that this exemption statute might be satisfied by a severance of titles in the specific real estate, and by treating as exempt merely the leasehold interest of the street railway company, and subjecting the other interests to general taxation. Such severance would be wholly foreign to the general scope and policy of our laws for taxation of real estate, and would render unworkable those providing for enforced collection. Wherever the tax statutes deal with real property, they refer to the land itself. The tax is laid thereon regardless of either the manner or extent in which title thereto is divided, and the enforcement

statutes are all predicated upon the idea that the sale is to cut to the bottom, to carry the ultimate and fundamental title; and those statutes require that, if there is to be any severance upon the sale, it must be of portions of the land itself, so that to whatever is sold complete title shall pass. The same suggestion now made by appellants is discussed and disposed of adversely in *Baltimore v. Canton Co.* 63 Md. 218, 235; *Sisters of Charity v. Detroit,* 9 Mich. 94, 102; Burroughs, Taxation, 223.

We are convinced that the rules of construction heretofore adopted by this court warranted the trial court in holding this parcel of land exempt, and that the judgment is right.

*By the Court.*—Judgment affirmed.

MARSHALL, J. (*dissenting*). I cannot concur in the conclusion in this case. The court seems to have so plainly fallen into error that argument is unnecessary to demonstrate it; that the exact situation needs but to be clearly stated. I take no exception to the view that in case of a license fee system of taxation as to specific property, as that of a railway company, made to take the place of the general system applicable to other property, the law in that regard should be liberally construed, if necessary, so as to include all property which would be taxable by such general system to the railway company if it were not for such license method. To go further, however, and include property taxable to other persons under such general system and justify it by the power of the court to judicially construe, goes outside the limits of such power into that of legislation.

I may not get the judicial idea intended to be expressed in the opinion of the court; but to avoid one doing violence to words under the guise of construction I must conclude that my brethren do not claim that subd. 14, sec. 1038, Stats. 1898, was intended to do more than render property, which would in the absence of the statute be directly taxable to the

railway company, in lieu thereof taxable indirectly under the license fee system. To that extent, it seems, the law voices its purpose too plainly to admit of any attempt to construe it. If the court had viewed the case presented in that light and determined first the question of whether the power plant, of which the railway company was a mere lessee, would in the absence of the fee system of taxing its property be taxable to it, the question of whether the word "owned" as used in the law means more than absolute ownership would have been immaterial. Passing over the fundamental question, as it seems the court did, the case was made to turn wholly on the meaning of the word "owned." I assume that no one will question that, if it were not for the section of the statute under consideration, realty circumstanced as that in question would be taxable to the landlord under sec. 1043; and that if the former section were repealed it would be so taxable. Then the court has extended subd. 14, sec. 1038, beyond its legitimate scope by applying it to property not taxable by such system to the railway company before the enactment.

The mere statement of those propositions, to my mind, as before indicated, clearly shows that a mistake has been made, and that the judgment of the circuit court should be reversed.