CITY OF MILWAUKEE, Appellant, vs. MILWAUKEE ELECTRIC
RAILWAY & LIGHT COMPANY, Respondent.

*November 15—December 5, 1911.*

*Street railways: License fees: Municipal corporations: Special char-
ters: Ordinances: Repeal and re-enactment of statutes.*

1. The uniform license fee imposed upon all street railway compa-
   nies by ch. 363, Laws of 1895, as amended by ch. 223, Laws of
   1897 (subd. 14, sec. 1038, Stats. 1898), is a substitute for all
   other license fees theretofore imposed upon such companies for
   the purposes of revenue; and that act abrogated all rights of
   cities, under sec. 1862, R. S. 1878, or under special charters, to
   impose license fees upon such companies, other than fees under
   the police power for the regulation and supervision of the
   business.
2. An annual license fee of $15 per car imposed upon street rail-
   way companies by ordinance of the city of Milwaukee was an
   impost for purposes of revenue and not merely to cover the
   expense incident to the regulation and supervision of the street
   railway business.
3. The re-enactment of sec. 1862, R. S. 1878, in the Revision of 1898
   in no way abrogated the force and effect of the provisions of
   ch. 223, Laws of 1897, which are incorporated and enacted in
   the Revision of 1898 as subd. 14 of sec. 1038.

APPEAL from an order of the circuit court for Milwaukee
county: W. J. TURNER, Circuit Judge.    *Affirmed.*

The complaint in this action alleges the incorporation of
the city of *Milwaukee* and the incorporation of the defend-
ant, and alleges that the defendant is the successor and as-
signee of various street railway companies which had oper-
ated street railways upon the streets of the city.    The dates
of the existence of these different predecessors of the defend-
ant are alleged, and the granting of franchises to them, the
streets upon which they were to operate, the provisions of
the ordinances granting the franchises which provide for the
license of the cars and the payment of a license fee, the ordi-

nances of the city prohibiting the operation of such cars without a license having first been obtained, the amount of the fee, and the fact that these ordinances were in full force and effect on May 1, 1910, are also alleged.

A cause of action for each of the fifteen years from May 1, 1895, to May 1, 1910, is alleged. The first five causes of action allege the number of cars operated during each of these years by the predecessor of the defendant without a license therefor having first been obtained, the amount of the fee, and the obligation of the defendant for the amount of the fee by reason of being the assignee of the company operating the cars during the year. The last ten causes of action each alleged for one year the operation of a specific number of cars by the defendant without a license having first been obtained, the amount of the fee, the obligation of the defendant for the amount of the fee, and the refusal to pay. The complaint also sets out a resolution of the common council of the city authorizing the institution of the action.

The defendant demurred to each of the causes of action; as to the first fourteen on the ground that each cause alleged did not state facts sufficient to constitute a cause of action and also that the various causes of action had not been commenced within the time limited by law; as to the fifteenth alleged cause of action the demurrer is on the ground that it does not state facts sufficient to constitute a cause of action.

The court sustained the demurrers to the first five causes of action on the ground that the statutes of limitation had run against them, and also on the ground that they did not state facts sufficient to constitute a cause of action. The demurrers to the other ten causes of action alleged were sustained upon the ground that the ordinances relied upon in the complaint to charge the defendant had been repealed by ch. 363, Laws of 1895, as amended by ch. 223, Laws of 1897.

This is an appeal from the order sustaining the demurrers.

For the appellant there was a brief by *Daniel W. Hoan,*

city attorney, and *Clifton Williams,* special assistant, and oral argument by *Mr. Williams.*

For the respondent there were briefs by *Miller, Mack & Fairchild,* and oral argument by *Geo. P. Miller* and *A. W. Fairchild.*

SIEBECKER, J.  The complaint alleges that between the 1st day of May, 1895, and the 1st day of May, 1896, the defendant and its predecessors in right as city street railway companies in and for the city of *Milwaukee* operated on various streets of the city 500 street railway cars without having paid the city treasurer or any of the plaintiff's officers a license fee of $15 per car as required by an ordinance of the city enacted under a power conferred upon the city by legislative authority.  A like cause of action is alleged against the defendant and in favor of the city for each of the succeeding annual license fees for cars so used and operated in the conduct of the street railway business within the city, and it is alleged that there is now due the city the sum of $187,500 as such license fees.  The trial court held that the provisions of ch. 363, Laws of 1895, embodied a revision of the legislation on the subject of taxes, assessments, and licenses upon street railway corporations by the state and by the municipalities under the authority of the state.  In the view we entertain of the issues presented by the demurrers of the defendant to the causes of action alleged in the complaint it is unnecessary to consider any questions except those arising by reason of the enactment of ch. 363, Laws of 1895, as amended by ch. 223, Laws of 1897.  The question is: Did this act abrogate the right of cities to collect license fees under the authority conferred by sec. 1862, R. S. 1878, which provides that such roads shall be subject to "the payment of such license fees as the proper municipal authorities may by ordinance from time to time prescribe?"  The purpose of ch. 363, Laws of 1895, is, as declared by its title, in effect a regulation of "the payment of licenses by street railway com-

panies within this state." Its first section declares that every person, company, or corporation within the state, "engaged in the operation, management and maintenance of a street railway, . . . shall pay . . . an annual license fee." This fee is to be paid to the city treasurer and is based upon the gross receipts, and is to be paid in the amount and in the manner prescribed. The statute provides (sec. 6) that "such license fee . . . shall be in lieu of all other taxes, assessments and licenses" and that the property and franchises shall be exempt from assessment and taxation. The act is clearly a regulation of the payment of licenses by street railway companies and evinces a legislative purpose to prescribe in its provisions what licenses street railway companies shall pay and what portions of the license moneys shall belong to the cities, to the counties, and to the state. The burden so imposed was manifestly an expression of the legislative intent as regards the proper burden to be paid as a revenue to cities, counties, and the state by those engaged in the street railway business.

It is however contended that the license fees sought to be collected in this action are not a burden imposed for the purpose of providing a revenue for the city, but are an exaction imposed as a condition to the right of the railway company to use the streets and are an exaction for regulating and supervising this business. In view of this contention it is important to ascertain whether or not the license fee here sought to be imposed and collected under legislative regulation is one for the purpose of revenue to defray the expenses of the city government. Under the principle of the recent decisions in the cases of *Wis. Tel. Co. v. Milwaukee,* 126 Wis. 1, 104 N. W. 1009, and *Merrill R. & L. Co. v. Merrill,* 119 Wis. 249, 96 N. W. 686, it is clear that the impost under ch. 363, Laws of 1895, is for revenue. As declared in the latter case:

"The purpose of this whole scheme was to measure the contribution of street railways to the public revenues by the earning capacity of their plants as entireties, recognizing that such

plants include many elements which are peculiarly intangible and difficult of valuation by ordinary methods. . . . It seems to us entirely probable that the legislature intended in a general way to exempt from assessment and taxation those things which, in association with each other, help to produce the gross revenue on which the license fee is to be measured." Page 255.

We find no sufficient grounds for departing from this conclusion in these cases, and in the light of them consider the license fee imposed by ch. 363, Laws of 1895, as a substitute for all other license fees theretofore imposed upon street railway companies for the purposes of revenue.   This intent is emphasized by the amendment to this chapter by ch. 223, Laws of 1897, as follows: "Such license fee shall be based upon the gross receipts . . . derived from any and all sources, and shall be in lieu of all taxes and other license fee," and the property used in such business "shall be exempt from all taxation, and other license fees."   It follows from this that laws in conflict with this enactment were repealed and that this act abrogated all rights of cities to impose any license fee under the law theretofore existing as embraced in sec. 1862, R. S. 1878, or under any power conferred upon cities by special charter provisions giving them authority to impose such license fees for providing a revenue for city purposes other than any fee exacted under the police power for the regulation and supervision of the business.   It is apparent on the face of the ordinance and from the amount of the fee imposed that it is an imposition for the purpose of revenue, and hence it cannot be treated as an exaction for the purpose of covering the expense incident to the supervision and regulation of the street railway business.   *Wis. Tel. Co. v. Milwaukee,* 126 Wis. 1, 104 N. W. 1009.   The contention that the license fee here sought to be collected is not an imposition for revenue cannot be entertained.   As stated in *Wis. Tel. Co. v. Milwaukee,* *supra* (p. 13):

"Even if the city had the right to impose reasonable charges for inspection and supervision, it should not be permitted

under the guise of such power to collect large amounts of revenue for the benefit of the city regardless of the amount necessary for such inspection and supervision."

It is claimed that these legislative acts did not effect an abrogation of the provisions of the charter of the city of *Milwaukee* conferring on the city the right "to tax, license and regulate road vehicles of any and every kind and description" (subd. 40, sec. 3, ch. IV), and that it has imposed this license fee under this provision and hence that it is a valid charge against the defendant. As already stated, it is apparent that the legislature intended that this license law should apply to the whole state. That necessarily includes all the cities of the state. The very purpose of the act is to impose a uniform license fee on all city street railways, and, as we have seen, this fee is imposed for the purpose of providing a revenue for cities, which is to be in lieu of all licenses for purposes of revenue theretofore imposed by cities under general law or charter provisions. There is no ground for exempting the provisions in the *Milwaukee* charter from the effect of this legislation, since it is clearly the intention of the legislature to provide a scheme for collecting revenue for cities from such railways in all the cities of the state.

It is urged that the city ordinance did not fall though the act authorizing it was repealed. This is not necessarily involved here, since we are of the opinion that the re-enactment of sec. 1862, R. S. 1878, in the Revision of 1898 in no way abrogated the force and effect of the provisions of ch. 223, Laws of 1897, which are incorporated and enacted in the Revision of 1898 as subd. 14 of sec. 1038.

Upon these grounds the complaint fails to allege any cause of action and the court properly sustained the general demurrers interposed by the defendant.

*By the Court.*—The order appealed from is sustained.